IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TODD FERRY, | : |
|     Petitioner | : |
|     v. | : Case No. 3:21-cv-214-KAP |
| MELISSA HAINSWORTH, | : |
| SUPERINTENDENT, S.C.I. LAUREL | : |
| HIGHLANDS, | : |
|     Respondent | : |

<u>Memorandum Order</u>

    Todd Ferry filed a habeas corpus petition challenging his conviction and the 10-20 year sentence imposed in November 2016 by Judge Travis Livengood of the Bedford County Court of Common Pleas, after a jury convicted Ferry of attempted kidnapping, false imprisonment of a minor, luring a child into a motor vehicle, and simple assault. Because Ferry has no meritorious claims, the petition is denied and no certificate of appealability is issued. The respondent's motion to dismiss, ECF no. 10, is granted and denied as provided in this memorandum.

<u>The claims</u>

    The petition sets out its claims on an AO 241 form petition at ¶12(a). Because of the limited space on the form, it is sometimes difficult to follow whether Ferry is setting forth a claim, the facts in support, or the reason why it was not exhausted, but I reproduce the claims in the form they appear in the petition. The "SEE #" notations refer to exhibits in the 115-page appendix to the petition.

    GROUND ONE: Whether Trial Counsel Appellate Attorney and Court Appointed Counsel rendered ineffective for not challenging trial Judge and Superior Court Judge's in their erred decision of Trial counsel's Pre-Trial Motion, in which, both Trial Judge and Superior Court Judge's decision was based on hearsay and neglect in accordance to the law, in which, both Trial Judge and Superior Court Judge's failed to read or review the police interview's of coercion and involuntaryness along with Defendant's invocations of Right of Silence and Right to Counsel? (See 6B)

    (1) Trial counsel's Pre-Trial motion was denied by the Trial Judge without review of the police interview's. Trial Counsel was therefore ineffective for not appealing the decision.

    (2) Appellate Attorney filed motion on direct Appeal to Superior court that the Trial court erred in denying Defendant's motion to suppress the statement and the buccal swab that was given to the Pennsylvania state Police. Superior Court

then erred in their decision ruling that the motion was based on no Miranda Rights being read. Appellate Attorney then erred and was ineffective for- not addressing issue to Supreme C.

(3) Court Appointed Counsel was ineffective for not addressing same issue. (SEE 6B)

GROUND TWO Whether, Appellate attorney, Terry Despoy, and Court Appointed Counsel, Christian Kerstetter, rendered ineffective for their failure to properly challenge Trial Court, Superior Court and Supreme Court's erred decision in permitting testimony about non-criminal acts by the Defendant and/or did not have probative value that outweighted their potential for unfair prejudice to the Defendant, that in which was brought on by the prosecution 9 days prior to Trial assuming in their 404(b) motion that the current case of attempted kidnapping was similar to a 24 year old NOT QUILTY case?

The prosecution used a 24 year old NOT QUILTY case against the Defendant in order to allow testimony of non-criminal acts that had nothing to do with the four (4) charges that the Defendant was on trial for. Six (6) commonwealth witnesses testified at the trial proceeding that was held on March 17, 2016, committing perjury and adding hear/say testimony that through objections by the defense attorney was over-ruled by the trial Judge. Three (3) of the witnesses did not know the Defendant. Two (2) of the other witnesses were sisters to the Defendant's neighbor. The last witness was a co-worker that was threatened with contempt by the lead detective if he didn't testify to a false statement that was in Defendant 's discovery. (SEE 8A)

GROUND THREE: Whether Appellate attorney, Terry Despoy, and Court Appointed Counsel, Christian Kerstetter, rendered Ineffective for their failure to add motions on Trial Judge's reversible error for not allowing trial defense attorney time to review police interrogation transcripts upon two (2) requests at the Pre-Trial hearing? During the conclusion of the Pre-Trial Hearing, that was held on October 2015, the District Attorney turned over the police interrogation tapes to the defense. At that time, Trial Attorney, Thomas Dickey, requested on two (2) occaisions to the Trial Judge, Travis Livengood, for time to review the tapes in case there was any issues that would show coercion and involuntariness. Trial Judge denied the requests. (SEE 9B)

Appellate attorney, Terry Despoy, made small argument on Direct appeal to the Superior Court. Superior Court waived the issue because Appellate attorney failed to include the issue in petitioner's Concise Errors. Issue was never taken to the Supreme Court. Court Appointed Counsel failed to put in any motions. Counsel also withdrew prior to PCRA Hearing. (SEE 10A)

GROUND FOUR (4) Whether, Trial Counsel, Appellate Counsel, and Court Appointed Counsel rendered Ineffective for their failure to address lack of probable cause for interrogating the Defendant on 02/27/2015 after lead detective

Dana Martini, had just received a DNA lab report dated 02/26/2015 that ruled out the Defendant of any involvement of the evidence from the crime scene, and that all three (3) counsels were ineffective for their failure to address the wrong dates and collusion on the Rights Waiver and the police interrogation transcript, that in fact is not a harmless error due to the paramount weight and power that the two (2) forms carried in the Defendants false arrest?

defendant was questioned at the bedford county police barracks one day after the lead detective, dana martini had received dna results from an alleged garbage pull that was negitive to the defendant and did not match any evidence from the crime scene.   Defendant was questioned and interrogated at the police barracks on 02/27/2015. rights waiver is dated 02/26/15. police interrogation transcript is dated 02/22/2015. (SEE 11A)

defendant was unawhere of the evidence or lack of evidence that was in the dna lab report. defendant was never told that the dna was not tied to him prior to the police interrogation. i.a.o.c . ineffective assistance of counsel gives the petitioner reasons or reasoning that the grounds mentioned above have not been exhausted.

<u>GROUND FIVE (5)</u> Whether, the Superior Court used bad judgement and prejudice against the petitioner for denying him a second (2nd) and third (3rd) request for extention of tine for re-argument during the middle of the covid-19 outbreak, when in fact, the same Superior Court granted the petitioner's first (1st) request?

The Superior Court granted petitioner's first (1st) request for enlargement of time for re—argument on March 12, 2021. This took place three weeks after the Court' s final decision on petitioner's PCRA. Petitioner was then denied on all futher requests during the height of the Covid-19 outbreak, at a time in which access to the institutional Law Libuary was impossible due to lock-down in all Pennsylvania State Prisons. (SEE 12A)

<u>The law</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996,. 28 U.S.C.§ 2244 allows a federal court to issue a writ of habeas corpus to a person challenging a state court criminal conviction and sentence if the petitioner establishes that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.§ 2254(a); *see* <u>Howell v. Superintendent Rockview</u> SCI, 939 F.3d 260, 264 (3d Cir.2019).

AEDPA does not permit a federal court to review state trial or appellate proceedings *de novo*. As a preliminary matter, 28 U.S.C. § 2254(b)(1) and (2) require petitioners challenging state sentences to first exhaust their state court remedies or show that none exists. Exhaustion requires presentation of the same factual and federal

legal basis for the habeas claim to the state court in the manner prescribed by its procedural rules. Duncan v. Henry, 513 U.S. 364 (1995) (*per curiam*); Robinson v. Superintendent, SCI Somerset, 722 Fed.Appx. 309, 312 (3d Cir.2018). When a claim is not properly presented under state law and has been declared barred under an adequate state legal rule, it is procedurally defaulted and cannot be considered unless the petitioner shows cause for which the state is responsible and prejudice, or that the failure to consider the claim would result in a fundamental miscarriage of justice. Gray v. Netherland, 518 U.S. 152, 161-62 (1996); Coleman v. Thompson, 501 U.S. 722, 750 (1991).

When the state court adjudicates a petitioner's claims on the merits, 28 U.S.C.§ 2254(d) requires a petitioner to show that the ruling:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The relevant ruling is that of the last state court to decide a petitioner's federal claim on the merits in a reasoned opinion. Wilson v. Sellers, 200 L. Ed. 2d 530, 138 S. Ct. 1188, 1192 (2018). In this case, that requires this court to determine whether Judge Bowes' decisions are not unreasonable.

A legal principle is "clearly established" "as determined by the Supreme Court" within the meaning of this provision when it is embodied in a holding of the Court in a case presenting a closely similar issue. Thaler v. Haynes, 559 U.S. 43, 47 (2010); Carey v. Musladin, 549 U.S. 70, 74 (2006); s*ee also* Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" of federal law requires the court to ask whether the state court unreasonably applied Supreme Court precedent, not whether it was "merely wrong." White v. Woodall, 572 U.S. 415, 419 (2014). An unreasonable application of law can be found only when the arguments or theories that supported or could have supported the state court's decision are so inconsistent with a prior holding of the Court that every fairminded jurist would agree that the state court ruling is wrong. *See* Harrington v. Richter, 562 U.S. 86, 102 (2011).

An unreasonable determination of the facts is one where the petitioner proves by clear and convincing evidence, 28 U.S.C.§ 2254(e)(1), that the conclusion drawn from the evidence by the state court is so improbable that it "blinks reality." *See* Miller-El v. Dretke, 545 U.S. 231, 266 (2005). Where reasonable minds might disagree, a federal habeas court cannot reject the state court's determination. *See* Rice v. Collins, 546 U.S. 333, 341–42 (2006).

These are deliberately demanding standards. Habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not second bite at the apple or a substitute for ordinary error correction through appeal. A petitioner must show "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, *supra*, 562 U.S. at 102-03. As the Court of Appeals has put it, "AEDPA gives state courts the benefit of th[e] doubt." Brown v. Wenerowicz, 663 F.3d 619, 634 (3d Cir. 2011)(reversing the grant of habeas corpus on a Strickland v Washington claim where attorney error that resulted in the exclusion of an alibi witness was conceded, but the district court gave insufficient deference to the state courts' conclusion that the lack of that alibi witness testimony did not prejudice the defendant.)

Under Strickland v. Washington, 466 U.S. 668 (1984), a petitioner claiming a violation of the Sixth Amendment's guarantee of the assistance of counsel must show that counsel's performance "fell below an objective standard of reasonableness." 466 U.S. at 688. Strickland v. Washington presumes that counsel was effective, and explains why:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

466 U.S. at 689 (internal citations and quotations omitted). *See* Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990) ("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained.") It is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir.1997) (*quoting* United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989) ).

Strickland v. Washington also requires a petitioner to show prejudice, that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. In making that determination the habeas court must consider the strength of the evidence. Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir.1999). Taking Strickland and AEDPA together, a federal court's review of a state court rejection of an ineffectiveness claim must be doubly deferential. Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

The record

The petition assumes that the reader is familiar with the voluminous record in this matter, and Ferry's writing style is also difficult. After having read the record, including the trial transcript and the PCRA transcript, I think the best place to start with the factual background necessary to understand this matter is the direct appeal opinion by Judge Bowes of the Pennsylvania Superior Court, Commonwealth v. Ferry, No. 1897 WDA 2016, 2018 WL 2750238 (Pa. Super. June 8, 2018), *petition for allowance of appeal denied*, 199 A.3d 342 (Pa. December 19, 2018):

> On November 14, 2014, seventeen-year-old J.Z., a member of the Mennonite community, bicycled home from her job at a produce farm, accompanied by her friend, Ruthann. She and Ruthann parted ways when J.Z. reached the lane that led to her family's farm. After retrieving the mail, as she did every day, J.Z. travelled up the lane until a man grabbed her, knocking her off her bike. It was dark, and she was unable to see his face. N.T. Trial, 3/17/16, at 91. He repeatedly said "get in the car, you're coming with me." *Id.* at 78. The man held her by the shoulders and dragged her towards his truck, attempting to put something over her head and to open the door of the truck. *Id.* at 79, 94. J.Z. eventually pulled away from him and ran to the house, reporting the incident to her parents. *Id.* at 80. J.Z.'s dress and vest were torn in the struggle, and she sustained bruises to her shoulders and knees. *Id.* at 87–89, 135–37. J.Z.'s father went out to the lane and found her bicycle, the mail scattered on the ground, and a pair of black sweatpants with a knot tied in them. *Id.* at 152–55. Lab tests later revealed the presence of dark dog hairs on the pants. *Id.* at 270.
> The next day, J.Z.'s mother found an envelope in the mailbox. She called the State Police, who arrived and opened it in her presence. The unsigned letter read as follows.
>
> > I'm sorry about the wrestling match I had with you. I never meant no harm. I wanted you to talk to me. How does one non-Mennonite talk to a beautiful lady Mennonite? I fell in love with you and I seen you one year ago, and now ... you'll never talk to me. I can't come to your house and ask your momma to date [her] daughter. I can't come to your place of work and ask you out. There is no way to approach you and now I have failed my only way.

> I hope you can understand. I still want to meet you and you don't need to fear me. I will never do that again. I promise. Sorry. Please forgive me. *Id.* at 133.

In investigating the incident, Trooper Dana Martini of the Pennsylvania State Police interviewed people in the area, particularly other Mennonite girls who traveled by bicycle, and Appellant's name came up several times. *Id.* at 262–64. Trooper Martini began surveilling Appellant, and observed that he drove a truck which matched the description of the one involved in the incident with J.Z., that he had a large, dark-colored dog, and that he visited several Mennonites on his day off. *Id.* at 268. Based upon these observations, Trooper Martini decided to interview Appellant.

Appellant, a man in his mid-fifties, initially denied involvement in the incident, and claimed not to have any knowledge of the lane on which the attack occurred. Trooper Martini asked him to provide a buccal swab for DNA testing, and Appellant complied. *Id.* at 276. Appellant agreed to be interviewed by Corporal Edward Mahalko, and continued to deny his involvement for approximately the first hour of the second interview. After Corporal Mahalko confronted Appellant with the apology letter left in J.Z.'s mailbox, Appellant "changed his story." *Id.* at 306. Appellant then

> admitted to being at the location and doing the things that the victim described. He stated he was there. He just wanted to talk to her. He thought she was another girl. He admitted that he grabbed her wrist. He admitted that he pulled on her wrist. He [stated] that he used the sweatpants that he left at the scene—he knew that they fell.... He said that he used them to conceal his identity so she didn't recognize him. And he said that he had written a note and took it back to her house.... *Id.* at 281.

Other Mennonite girls and young women were also the object of Appellant's attentions. Joel Amick, Appellant's coworker, told Trooper Martini that Appellant knew the names of all of the Mennonite girls, thought they were pretty, and specifically was interested in "Ruthie" and "the one that rode bikes with Ruthie." *Id.* at 238–39. Appellant indicated that he knew where Ruthie and her friend worked. *Id.* at 239. Mr. Amick advised Appellant to be careful about the girls under eighteen, and Appellant responded with a laugh. *Id.* at 239–40.

Ruthann indicated that Appellant "was overly friendly" with her, bringing lunch to her and her coworkers at the market where she and J.Z. worked, inviting her to a Christmas party, and, on another occasion, inviting her to have pizza. *Id.* at 215–18, 221. Ruthann's sister, N.Z., when she was fourteen years old, did work for Appellant, including cleaning and husking corn. *Id.* at 207–08. While driving N.Z. and her sister to his house, Appellant indicated that he wanted to take her to his cabin in the mountains so she could clean it. *Id.* at 209. Another time, Appellant called N.Z. at home at night and asked her to meet him at the school "to talk with him." *Id.* at 210.

Upon testimony reflecting these facts, a jury convicted Appellant of the crimes indicated above. On November 4, 2017, the trial court sentenced Appellant

to ten to twenty years imprisonment on the attempted kidnapping count, and concluded that the other convictions merged for sentencing purposes.

2018 WL 2750238, at *1–2. Ferry was represented in the pretrial period and at trial by Thomas Dickey, Esquire. Terry Despoy, Esquire, subsequently appeared as counsel and handled sentencing and the direct appeal. On direct appeal, Despoy presented five claims to the Superior Court:

> I. Was the evidence insufficient, as a matter of law, to prove all of the required elements of the offenses of which [Appellant] was convicted?
>
> II. Did the trial court err and/or abuse its discretion in permitting testimony of Commonwealth witnesses about non-criminal actions and statements by [Appellant] that were irrelevant, had the effect of impugning the character of [Appellant], and/or did not have probative value that outweighed their potential for unfair prejudice to [Appellant]?
>
> III. Did the trial court err and/or abuse its discretion in denying [Appellant's] pre-trial motion to suppress the statements and buccal swab he gave to the Pennsylvania State Police and in permitting the admission at trial of [Appellant's] DNA evidence obtained from the buccal swab?
>
> IV. Did the trial court err and/or abuse its discretion in sentencing [Appellant] to the maximum permissible prison sentence under all of the facts and circumstances of this case?
>
> V. Did the trial court err, as a matter of law, in sentencing [Appellant] outside the sentencing guidelines without issuing a contemporaneous written statement setting forth the reasons for deviating from the guidelines?

Commonwealth v. Ferry, *supra*, 2018 WL 2750238, at *2–3. On the first claim, the Superior Court panel rejected the sufficiency of the evidence challenge as to all four counts of conviction, in the process mildly scolding the trial court and prosecution for addressing only the attempted kidnaping count, because on direct appeal the rule is that a sufficiency of the evidence claim must be reviewed regardless of its impact on the length of sentence.

In collateral proceedings the rule is different due to the concurrent sentence doctrine. Because habeas corpus is concerned with detention *simpliciter*, review of claims that do not affect petitioner's custody can provide no basis for a writ. I address only the sufficiency claim relevant to the attempted kidnaping, which was exhausted by Despoy's presentation of essentially the same facts and legal argument to the Superior Court. Despoy argued that although Ferry's actions were inappropriate, there was no evidence of two necessary elements of the state law definition of kidnaping, namely that Ferry intended to remove J.Z. a substantial distance, and that Ferry intended to injure

8

or terrorize the victim or another. The appellate panel found that Ferry tried to force J.Z. into his vehicle, thus evidencing both an intent to remove and to terrorize her.

Sufficiency of evidence claims are governed by the standard in Jackson v. Virginia, 443 U.S. 307, 319 (1979): "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." In habeas, AEDPA commands this court to decide only whether the state court's Jackson v. Virginia assessment was not unreasonably wrong. The trial transcript supports Judge Bowes recitation of the facts. A jury that believed J.Z.'s testimony had an ample basis to find an intent to remove and an intent to terrorize under any standard of review. For purposes of habeas review it is enough to say that the Superior Court's rejection of the petitioner's sufficiency of the evidence claim as to the attempted kidnaping charge is a not unreasonable reading of the record.

Despoy's second claim was a challenge under Pennsylvania's version of F.R.E. 404(b) to virtually all the testimony of all the witnesses other than J.Z. because they were "about actions or statements allegedly made by [Ferry] that were either irrelevant, had the effect of impugning his character, or did not have probative value that outweighed their potential for unfair prejudice." Petitioner's direct appeal brief at 23.

In the pretrial proceedings Dickey vigorously tried to limit almost all background evidence so that the jury would hear only the irreducible minimum of the encounter between Ferry and J.Z. by arguing the marginal relevance and great chance of prejudice in the testimony by other witnesses about Ferry's interest in and attempts to contact other Mennonite girls. On direct appeal, Despoy continued in this theme. Judge Livengood and Judge Bowes rejected the claim for the obvious reason that the challenged testimony was relevant and necessary for the jury to make an informed conclusion about Ferry's intent.

I think both of Ferry's attorneys, Dickey before Judge Livengood and Despoy before the Superior Court, were capable and zealous in this attempt to keep damaging evidence out of the trial. I also think the state courts' rulings were correct. But whatever my opinions, this court cannot review this claim because it was not presented to the state court as a federal constitutional challenge. *See* Petitioner's direct appeal brief at 12, 22-31. Inquiry into the correctness of state law evidentiary rulings is not part of a federal court's habeas review of a state conviction because "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991)(citation omitted).

To forestall a futile argument by petitioner that not citing federal law was ineffective assistance of counsel, I note that there was no federal claim to raise and counsel cannot be ineffective for failing to raise meritless claims. Some evidentiary

9

rulings implicate federal constitutional concerns (examples are allowing redacted statements or hearsay statements that implicate the right to confrontation of witnesses) but garden variety Rule 403/Rule 404(b) rulings such as the ones in this case do not, because the types of rulings that present independent federal claims are very narrowly defined. *See* Dowling v. United States, 493 U.S. 342, 352-53 (1990). In Dowling the petitioner was convicted of bank robbery after the jury heard testimony about an allegedly similar home invasion for which Dowling had been tried and acquitted. The Supreme Court rejected the argument that appellate review of Rule 404(b) rulings needed to be supplemented by additional Due Process Clause analysis because the Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.*, 493 U.S. at 352-53.

Despoy's third claim was a combination of two claims that Ferry presents in different form in the habeas petition. During the investigation that led to the charges against Ferry, two Pennsylvania State Police officers, Trooper Martini and Corporal Mihalko, interviewed Ferry over the course of several hours. Both gave Ferry Miranda warnings and obtained waivers, although neither told Ferry he was under arrest nor considered Ferry to be in custody. During her interview, Trooper Martini asked Ferry if he would give a writing exemplar and a DNA sample: Ferry agreed to both and a DNA sample was taken by a buccal swab. Martini did not give Ferry any additional explanation of the Fourth Amendment law governing handwriting exemplars or DNA samples or DNA searches.

In the pretrial stage, Dickey attempted to suppress Ferry's statement on the grounds Ferry was in custody, asserting that there had been a Miranda violation. Because the troopers testified to giving Miranda warnings, Dickey focused on the relatively long period of time that Ferry had remained at the interview, implicitly asserting that Ferry's statements were involuntary. Dickey also made what could be called a vague "fruit of the poisonous tree" claim that sought to have the physical evidence to be suppressed. After a pretrial hearing, Judge Livengood found that Ferry had not been in custody, but that in any case he had validly waived his Miranda rights.

Neither the writing exemplar nor the buccal swab ever became relevant to the prosecution of this matter because Ferry admitted to writing the "I'm sorry" letter and that he was present at the scene. With the attempt to suppress the statement not having succeeded, the defense strategy was to concede at trial that Ferry was present at the scene but that his awkward - but not criminal - conduct resulted from Ferry mistaking J.Z. for her older sister, the woman he wanted to meet. This was a defense consistent with the statement, and it left the suppression issue for the appeal if necessary. On appeal, Despoy accordingly did raise the Miranda claim, arguing that the excessive length of the interrogation was inherently coercive, and also more or less sliding in a

claim without any independent Fourth Amendment basis that the physical evidence should have been suppressed. Petitioner's direct appeal brief at 32-37.

The Superior Court rejected the argument that the statement should be suppressed, stating:

> Appellant offers no argument that there was any deficiency in either the *Miranda* warnings or Appellant's waiver of his rights. Accordingly, we, like the trial court, are "confused at [Appellant's] pursuit of this issue on appeal." Id. at 3. We discern no merit in Appellant's contention that a *Miranda* violation warrants suppression of his statements or the DNA evidence.

2018 WL 2750238 at *8. (Pa. Super. Ct. June 8, 2018).

Despoy made an additional argument in his brief that the prosecution did not give the defense the transcripts of Ferry's interviews with Martini and Mahalko until the pretrial hearing, and that "the lower court's failure to afford [Dickey] an opportunity to … supplement his pretrial motion prior to the court's ruling on the motion was reversible error." Petitioner's direct appeal brief at 37. The Superior Court dispatched this argument in a footnote, holding it waived because it did not appear as a separate claim in the "Issues Presented" portion of the brief. 2018 WL 2750238 at *8.

Despoy's last two claims were sentencing claims based on Pennsylvania law, and therefore not reviewable here. No Eighth Amendment claim has ever been raised. Since the Supreme Court has never overturned a kidnaping or attempted kidnaping sentence as excessive, or a 10-20 year sentence for anything as excessive, if an Eighth Amendment claim had been made and rejected there would be no basis for finding it to be contrary to or an unreasonable application of federal law as determined by the Supreme Court.

After the Superior Court denied relief, Despoy filed a petition for allowance of appeal that the Pennsylvania Supreme Court rejected without explanation.

Ferry then filed a timely *pro se* petition and motion for appointment of counsel under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S.§ 9541 *et seq*. Judge Livengood appointed as counsel Christian Kerstetter, Esquire. The *pro se* petition presented five claims of what Ferry asserted was ineffective assistance of counsel, and one claim of what Ferry asserted was prosecutorial misconduct. The ineffectiveness claims can be summarized as: (A) Dickey failed to call eleven named "available witnesses or character witnesses." PCRA petition at 6-8. Other than grouping the witnesses by type (*e.g.*, "private investigator," "co-worker," etc.) Ferry did not describe what testimony they would have given; (B) Dickey could have done a better job of cross examination. Ferry gave no specifics and asked for an evidentiary hearing to "set forth a

factual record as to such omissions of counsel[.]" PCRA petition at 8-9; (C) Dickey should have asked for what is sometimes referred to as the "Massachusetts rule" instruction, *see* Commonwealth v. Cunningham, 370 A.2d 1172, 1188 (Pa.1977)(in dissent), that Ferry characterized as "putting the jury on notice that if the jury felt that the petitioner's confession was involuntary that the jury could not consider such confession as guilt." PCRA petition at 9; (D) Despoy failed to preserve a sentencing issue. PCRA petition at 9-10; and (E) Despoy included fewer issues in the petition for allowance of appeal to the Pennsylvania Supreme Court than were presented to the Superior Court. PCRA petition at 10-11. The prosecutorial misconduct claim, (F), was that the prosecutor failed to correct the victim when according to Ferry she testified falsely. The claim of false testimony was based on what Ferry argued was the inconsistency of her statements with those of other witnesses. PCRA petition at 11-12.

After review of the record, Kerstetter moved to withdraw under *Turner/ Finley* because he saw no nonfrivolous issues. Judge Livengood conducted an evidentiary hearing on the motion to withdraw and on Ferry's *pro se* petition on February 20, 2020. Ferry had an opportunity to explain and flesh out his pro se petition, following which Judge Livengood denied the PCRA petition for reasons he expressed on the record at the hearing. Ferry pursued a *pro se* appeal to the Superior Court, presenting two umbrella issues that the Superior Court noted as:

> I. [Whether t]he PCRA court committed error by finding Appellant's claim that the evidence at trial constituted a *Brady* violation lacked legal merit?
> II. Whether the PCRA court committed legal error by failing to find that the Appellant's Fifth Amendment constitutional claim pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), was controlling as to compel the Appellant's conviction and judgment of sentence illegal and unconstitutional under both the state and federal constitution?
> Appellant's brief at 13, 17.

Commonwealth v. Ferry, 2021 WL 653233 (Pa. Super. February 19, 2021, *reargument dismissed* April 23, 2021). The first issue, in a rambling and confusing four pages, presents two arguments: that because Dickey did not receive the interviews of Ferry until the pretrial hearing, they were "suppressed from the defense by the Trial Judge," and that Judge Livengood denied Dickey's requests for a chance to review "Exculpatory Material Evidence." Petitioner's PCRA appellate brief at 13, 13-16.  Ferry's second issue did not address the question whether he was in custody during the interview with Trooper Martini, but claimed that he did in fact invoke his right to silence and his right to counsel by statements at five places throughout the interview. Petitioner's PCRA appellate brief at 17-23. The specific exchanges are at pages 34-35 of the interview transcript:

Q [Martini]. ... I need to look into to determine if indeed somebody was trying to hurt her or not.
A [Ferry]. Well, if she was hurt, then someone was trying to hurt her. That's all I got to say. So I don't know.

And at page 79 of the transcript of the interview:

Q. I was hoping you could give me the rest of the story.
A. I can't. So if I'm guilty, take me to jail. That's all I got to say. Because I don't want to be here all afternoon. And if you want me to go home and you want me to come back next week or something, maybe I can think about it and come back in a week.

And at page 89:

A. I never meant to scare anybody. That's all I got to say. I never meant to scare anybody.
Q. So what happened? Why did you wait for her that night" Why'd you wait for her" If you don't know her, why did you wait for her? Can you answer that?
A. No, I can't answer that. I can only say that there's somebody out there that don't like me. That's all I got to say.

And at page 94-95:

A. I want to know  if I'm going to jail or if you're going to let me go.
Q. What does that have anything to do with me asking you what your plans were that night?
A. Because if it goes any farther, I'd probably be willing to speak with an attorney.
Q. Would you like to speak with an attorney? Is that what you're saying?
A. All I'm saying is ---. I'm asking a simple question. Am I going to go home, or are you going to have me arrested?
Q. I can't answer that right now, but you have a right to speak to an attorney.
A. I know.
Q. That is your right.
A. I know. And I don't want to be here ten hours.
Q. And I don't want to be here ten hours, either.
A. If you have all this evidence against me, you might as well bring it out, show me what you got. I know one person that talked bad about me. I know for sure.

And at page 105:

A. I'm giving you the best I can give you, What you got out of me is what you got. That's all I can give.
Q. You have nothing more to add?
A. No.

The Superior Court, in another opinion by Judge Bowes, denied both claims. Addressing the Miranda claim first, the court observed:

> Appellant maintains that, during his interview with Trooper Martini, he unambiguously and unequivocally invoked his constitutional rights to counsel and to remain silent, requiring the suppression of the statements he made thereafter, as well as DNA evidence that was subsequently collected, since Trooper Martini proceeded with the interview rather than immediately ceasing questioning. *See* Appellant's brief at 17-23.
> Appellant does not couch his claim in terms of the effectiveness of trial or direct appeal counsel; rather, he contends that the PCRA court should have held that the violations entitle Appellant to a new trial at which the evidence will be precluded. *Id.* at 24. Since Appellant could have raised his claim before his judgment of sentence became final, it is waived and not an eligible basis for PCRA relief. *See* 42 Pa.C.S.§ 9543(a)(3). Hence, Appellant's *Miranda* claim merits no relief.

Commonwealth v. Ferry, 2021 WL 653233, 249 A.3d 1164 (Pa. Super. February 19, 2021), *reargument dismissed* (Apr. 23, 2021). Judge Bowes is correct about the presentation of the Miranda claim: Ferry presents an argument that under Commonwealth v. Lukach, 649 Pa. 26, 38, 195 A.3d 176, 183 (2018), his statements at the interview were an invocation of his right to silence, but at no point does he claim that Dickey, Despoy, or Kerstetter were ineffective for failing to raise or preserve this issue. *See* PCRA appellate brief at 17-23. This is not surprising: since Lukach was decided after the direct appeal, and the Supreme Court expressly observed in Lukach that it was deciding a matter of first impression that had "no requisite precedent," 195 A.3d at 185, Kerstetter could not have made a reasonable claim that either trial or appellate counsel was ineffective for failing to predict Lukach.

Turning to what Ferry labeled as a Brady claim, the Superior Court found that Ferry's argument rested on an incorrect factual basis:

> The evidence that he complains was withheld are his statements supposedly invoking his rights to counsel and to remain silent, which he claims that the Commonwealth improperly suppressed by failing to turn over the recordings of his interview with Trooper Martini. *See* Appellant's brief at 14-16. Appellant further asserts that the trial court suppressed this evidence at the conclusion of the hearing on his pre-trial motions, yet he also acknowledges that the recordings were provided to his trial counsel at that hearing. *Id.* at 13. Moreover, he recognizes that his direct appeal counsel "obviously reviewed [the] entire police interviews." *Id.* at

> 15. Nonetheless, Appellant maintains that the trial court, as well as the prosecution, his trial counsel, and his appellate counsel, all committed *Brady* violations by wrongfully keeping from him the evidence that he had invoked his *Miranda* rights during the interview. *Id*. at 15-16.
> We disagree. "A defendant claiming a *Brady* violation must plead and prove: the prosecution suppressed the evidence, either willfully or inadvertently; the evidence is favorable to the defense; and the evidence is material." *Commonwealth v. Lynch*, 242 A.3d 339, 350 (Pa.Super.2020) (cleaned up, emphasis added). Appellant cannot satisfy the first prong, as the record reflects that the prosecution provided the recordings to Appellant's trial counsel at the hearing on his pretrial motions. *See* N.T. Omnibus Pretrial Motion Hearing, 10/2/15, at 117. Trial counsel acknowledged having belatedly received the recordings, requested time to determine whether they provided additional bases to support his suppression motion, and informed the trial court that he would file an additional brief if necessary. *Id*. at 118. Counsel did file a subsequent motion on other pretrial matters, and thus had the opportunity to utilize the recordings of Appellant's interviews to seek suppression but did not avail himself of that opportunity.

Commonwealth v. Ferry, 2021 WL 653233.

The Superior Court then pointed out that what Ferry was really arguing was that trial and appellate counsel were ineffective for failing to make a better argument in support of Ferry's suppression claim, and that this claim was also foreclosed:

> To the extent that Appellant complains that trial and appellate counsel should have used the statements in question to support his suppression argument, his claim sounds in ineffective assistance of counsel, not *Brady*. To prevail on such a claim, Appellant was required to separately plead and prove not only that the claim of error had arguable merit, but also that counsel had no reasonable basis for the omission and that Appellant was prejudiced. *See*, *e.g.*, *Commonwealth v. Bond*, 819 A.2d 33, 40 (Pa. 2002) (explaining that PCRA petitioner must purse a distinct ineffectiveness claims to circumvent the waiver of the underlying claim of trial court error that could have been previously litigated). However, Appellant did not raise an ineffectiveness claim in the PCRA court, and thus may not argue it for the first time on appeal. *See*, *e.g.*, *Commonwealth v. Santiago*, 855 A.2d 682, 691 (Pa. 2004) ("[A] claim not raised in a PCRA petition cannot be raised for the first time on appeal."). Therefore, Appellant's second issue merits no relief.

Commonwealth v. Ferry, 2021 WL 653233.

Claims this court can review

     Ferry filed his timely federal habeas petition, presenting the claims set forth above. Ground One presents the suppression claim that was exhausted on direct appeal by Despoy's presentation of it to the Superior Court, plus the new suppression

claim that Ferry invoked his right to silence during the interview with Trooper Martini. Ferry hopes to have the new claim considered by appending the assertion that all previous counsel were ineffective for failing to raise it. Ground Three presents the related claim that the pretrial procedure that should have been followed was that Judge Livengood should have given Dickey time to review the recording of the PSP interviews before the suppression hearing, rather than giving Dickey leave to file a follow-up brief if his review disclosed anything new. Ferry implicitly asserts that Dickey was ineffective in not raising the claim that Ferry invoked his right to silence either his way or Judge Livengood's way. Ferry expressly asserts that Despoy "made small argument" on this point in the direct appeal and was therefore ineffective in failing to raise or preserve a claim that Judge Livengood erred.

As I have already noted above, the rejection on direct appeal of the Miranda claim that Despoy raised was not unreasonable. Ferry cannot present his new claim: to properly present the claim that he invoked his right to silence requires him to allege that the failure to present it properly in the trial court and preserve it on appeal was due to the ineffectiveness of counsel. But the ineffectiveness claim itself has to be presented properly. The initial place to do this was in the PCRA petition. Ferry presented the six claims noted above in the PCRA petition, but presented neither a claim that he invoked his right to silence nor a claim of ineffectiveness related to that claim. Ferry did discuss the substance of his Miranda claim based on Lukach in the state courts in the hearing before Judge Livengood on Kerstetter's motion to withdraw. If his remarks at that juncture could be considered a sufficient presentation of a claim of trial and direct appeal counsels' ineffectiveness (and they cannot be), Ferry subsequently defaulted any such claim, as Judge Bowes pointed out, by failing to present that ineffectiveness claim in the PCRA appeal. Since Ferry had no right to constitutionally effective assistance of counsel at that stage of the proceedings, Ferry's failure to properly present his claim constitutes an unexcused procedural default of it.

Even if I were to ignore AEDPA, overlook all the defaults, and consider the ineffectiveness claim *de novo*, the most that can be said is that Dickey and Despoy failed to anticipate a subsequent opinion by the Pennsylvania Supreme Court that might have prompted a different ruling if Judge Livengood's finding that Ferry's interrogation was not a custodial interrogation could also be overturned. Since a failure to anticipate coupled with reliance on a counterfactual history is not ineffectiveness, neither Dickey nor Despoy was ineffective and Kerstetter had no obligation to raise a meritless claim that they were.

Ground two presents a non-issue. Before trial the prosecution gave notice that it might seek to use evidence of a past sexual assault of a minor. Decades earlier Ferry

16

had been prosecuted for and acquitted of sexual assault of a minor. At the omnibus pretrial hearing, the prosecution conceded that it could not present the evidence in its case in chief but argued that depending on what Ferry testified to the evidence might be available as impeachment material. The matter did not come up again: Ferry did not testify at trial and the evidence of a prior assault was not used. No claim has ever been presented to the state courts at any juncture that any ruling relevant to this claim was improper.

Ground Four rests on errors of law and fact: the troopers were not required to have probable cause before seeking to interview Ferry, DNA evidence did not "rule him out" as a suspect at any point, and the typographical errors in police reports that Ferry points out are immaterial. But this court could not grant a writ based on these claims because they were never presented to the state courts.

Finally, Ground Five is not based on any federal law. This court does not have the power to grant habeas corpus on the ground that a state court's denial of a second continuance to brief a request for reargument was wrong.

The petition is denied without a certificate of appealability. The Clerk shall mark this matter closed.

DATE: January 17, 2023

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Todd Ferry MT-7996
S.C.I. Laurel Highlands
5706 Glades Pike
P.O. Box 631
Somerset, PA 15501